# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 13, 2013

## STATE OF TENNESSEE v. DANIEL TYREE HUMPHREY

**Appeal from the Criminal Court of Davidson County**
**No. 2009-I-83    J. Randall Wyatt, Jr., Judge**

**No. M2012-01740-CCA-R3-CD - Filed March 15, 2013**

Daniel Humphrey ("the Defendant") pleaded guilty to aggravated burglary and, pursuant to his plea agreement, was sentenced as a Range I, standard offender to three years on community corrections. Upon the subsequent filing of a violation warrant, the Defendant was taken into custody, and the trial court held an evidentiary hearing. At the conclusion of the hearing, the trial court revoked the Defendant's community corrections sentence and ordered him to serve the remainder of his original sentence in confinement. The Defendant appealed the trial court's ruling. After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

William Justin Conway, Nashville, Tennessee, for the appellant, Daniel Humphrey.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson III, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was indicted on February 4, 2009, on one count of aggravated burglary. On February 10, 2009, the Defendant pleaded guilty to the indicted offense, and the trial court sentenced the Defendant pursuant to the plea agreement to three years'

community corrections.  The Defendant also was required to pay restitution to the victim in the amount of $2,500.

On June 27, 2012, a violation warrant was filed, alleging that the Defendant violated one of the terms of his community corrections agreement "[w]hich states that the offender shall obey all Federal, State, and Local laws."  The warrant alleged that the Defendant "was arrested for Domestic Assault, Bodily Injury" on June 27, 2012.[1]

The trial court held a hearing on this alleged violation on July 20, 2012.  At this hearing, Lanesha Walker, the Defendant's ex-girlfriend, testified that on June 27, 2012, she and the Defendant had a "heated argument" in the drive-through at McDonald's.  Walker attempted to "distance" herself from the Defendant, so she got out of the car and started walking to go inside the restaurant.  Police officers were in a parking lot across the street, and Walker assumed that they observed her getting out of the car.  The police approached them before she entered the restaurant.

At the point that Walker got out of the vehicle, she claimed that the Defendant had not touched her.  However, she "was mad and upset and . . . told the officers that [the Defendant] put his hands around [her] neck."  She also told the officers that the Defendant "pushed [her] toward the driver's side door," but she claimed that this accusation actually was false.  Walker testified that, prior to this hearing, she told the State, "I would rather not testify against [the Defendant], . . . but you told me that I had to."  She also acknowledged that, during that conversation with the State, she admitted that "some of the things" in the warrant were true.  She then admitted telling the State that all the facts were true but that she was reluctant to testify against the Defendant "[b]ecause he was doing well, he was going to school, and he was helping me with my daughter."  On cross-examination, however, Walker again claimed that the Defendant did not physically touch her on the night of the incident.

Walker acknowledged that, on the night of this incident, she had a scratch on the left side of her neck, but she stated that the scratch was from her dog and not the Defendant.  However, she did not give the officers any explanation when they asked her about the scratch.

Sergeant Terrence Bradley with the Metro Nashville Police Department testified that he was working on June 27, 2012.  He pulled into the drive-through at McDonald's to get some food and just happened to pull up behind the Defendant and Walker.  He stated that

---

[1] Although not clear from the record, it appears that the Defendant had prior violations of terms of his community corrections sentence which resulted in the extension of his original community corrections sentence.

at some point [Walker] . . . is out of the vehicle and she is very agitated, very excited. . . . She is yelling cuss words, . . . she was telling us stuff like, "Get his ass." "He ain't got no business putting his hands on me." Stuff like that. [The Defendant] is outside. He is excited as well. I call for another car. Officer Terrazas gets there. . . . We get them separated.

I talked to the [D]efendant first. He advised me that they were arguing about something that happened at the house, but he said he didn't put his hands on her. We got [Walker] separated with Officer Terrazas. I go over to talk to her. She is advising that . . . they were arguing and she said that he choked her. She had a little, I mean, it wasn't a big scratch . . . across her neck. At that point, I advised Officer Terrazas to take the [D]efendant into custody. At that point she later recanted her story and said that she lied to us.

Sergeant Bradley agreed that Walker recanted her story when she realized that they were arresting the Defendant. He recalled that "she just kept saying . . . that she needed him, so to watch her kids, and I assume that is why she recanted her story."

At the conclusion of the hearing, the trial court found by a preponderance of the evidence that the Defendant placed his hands on Walker and "that they were causing all kinds of disorderly activity where children are going to McDonalds." Regarding Walker's testimony, the court found that "it is obvious that she is trying to take care of or help" the Defendant. The trial court noted Walker's admission to the State prior to the hearing that the facts in the warrant were true but that she did not want to prosecute the Defendant. Further, the court stated, "[The Defendant] is helping her and she hates to see him have this revoked." Given its findings from the hearing and the fact that the Defendant had "five or six prior violations," the trial court revoked the Defendant's probation, requiring the Defendant to serve the remainder of his sentence in incarceration. The Defendant timely appealed.

## Analysis

The Defendant asserts that the trial court erred in revoking his community corrections sentence. "Given the similar nature of a community corrections sentence and sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper." State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). In a probation revocation proceeding, the State must prove that the defendant violated the terms of his or her probation only by a preponderance of the evidence. Id. Once the State has met its burden of proof, the subsequent decision regarding revocation lies within the sound discretion of the trial judge. See, e.g., State v. Walker, 307 S.W.3d 260, 263 (Tenn. Crim. App. 2009); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Therefore, on appeal, we will not disturb the trial court's decision to revoke probation absent an abuse of discretion. State v. Farrar, 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011); see also State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." Farrar, 355 S.W.3d at 586 (quoting State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010)).

Tennessee Code Annotated section 40-36-106(e)(4) (2010) provides that, in the context of a community-based alternative to incarceration,

> [t]he court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration. The resentencing shall be conducted in compliance with § 40-35-210.

Following the revocation hearing, the trial court found that the Defendant placed his hands on Walker and "that they were causing all kinds of disorderly activity where children are going to McDonalds." Regarding Walker's testimony, the court found that "it is obvious that she is trying to take care of or help" the Defendant. The trial court noted Walker's admission to the State prior to the hearing that the facts in the warrant were true but that she did not want to prosecute the Defendant. Further, the court stated, "[The Defendant] is helping her and she hates to see him have this revoked." Thus, the trial court found that the State carried its burden in establishing the Defendant's violation by a preponderance of the evidence.

We conclude that the trial court did not abuse its discretion. The violation warrant alleged that the Defendant violated the term of his community corrections agreement "[w]hich states that the offender shall obey all Federal, State, and Local laws." The warrant further alleged that the Defendant "was arrested for Domestic Assault, Bodily Injury" on June 27, 2012. Although Walker denied at the evidentiary hearing that the Defendant touched or harmed her physically, she admitted that she "told the officers that [the Defendant] put his hands around [her] neck." She also told the officers that the Defendant "pushed [her] toward the driver's side door." Walker testified that, prior to the hearing, she told the State, "I would rather not testify against [the Defendant], . . . but you told me that I had to." She also acknowledged that, during that conversation with the State, she admitted

that all the facts in the warrant were true but that she was reluctant in testifying against the Defendant "[b]ecause he was doing well, he was going to school, and he was helping me with my daughter."

Sergeant Bradley testified that, when he spoke to Walker at the scene, she stated that the Defendant choked her. He observed a scratch across her neck. Although Walker acknowledged having this scratch, she stated at the hearing that it was from her dog and not the Defendant. However, she did not give the officers any explanation when they asked her about the scratch at the time of this incident. According to Sergeant Bradley, after Sergeant Officer Terrazas took the Defendant into custody, Walked then "recanted her story and said that she lied to us." He recalled that "she just kept saying . . . that she needed him, so to watch her kids, and I assume that is why she recanted her story."

The Defendant asserts that the trial court improperly discredited Walker's testimony that the Defendant never touched her. However, we recognize that in revocation hearings, "the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor." State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). We conclude that the trial court did not abuse its discretion in finding that the Defendant violated the terms of his community corrections sentence. Accordingly, we affirm the trial court's decision to revoke the Defendant's community corrections sentence and require that he serve his original sentence, with credit for time previously served.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court.


_____
JEFFREY S. BIVINS, JUDGE